The following constitutes the order of the Court.
Signed: May 8, 2019

_____
**William J. Lafferty, III**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

```
In re                          )    Case No. 17-42255 WJL
                               )    Chapter 13
Crystal Lynn Porter,           )
                               )    Date:      April 17, 2019
            Debtor.            )    Time:      10:30 a.m.
                               )    Location:  220
                               )               1300 Clay Street
                               )               Oakland, CA 94612
                               )
```

**ORDER OVERRULING DEBTOR'S OBJECTION TO CLAIMS**

On April 17, 2019 the Court held a hearing on Debtor's *Renewed Objections to Proofs of Claims of LVNV Funding, LLC* (the "Objection") (doc. 191) in the above captioned case. Appearances were made on the record. Briefly summarized, the Objection poses the question whether three proofs of claim that were filed within the deadline that unquestionably pertained when the case was converted from one under Chapter 7 to one under Chapter 13, and which was confirmed by an official "Notice" sent out by the Clerk's Office, were nonetheless untimely because an intervening change in the pertinent Federal Rule of Bankruptcy Procedure, which shortened by almost two months the deadline for filing claims, should be applied retroactively. Stated slightly differently, the Court must decide whether it would be "just and practicable" to apply the change in the Rule to this already pending case. At the conclusion of the hearing, the Court took the matter

under submission. For the reasons set forth below, the Court HEREBY OVERRULES the Objection.[1]

In order fully to assess the issues presented, some background is necessary.

On September 7, 2017 Debtor filed a chapter 7[2] bankruptcy case. This original filing was done by the Debtor pro se, and without the advice of counsel. It appears that the Debtor did not then understand that, in a Chapter 7 case a trustee would be appointed, whose principal task would be to identify assets of the estate, liquidate them, and pay proceeds to creditors on account of allowed claims. The Debtor owns her residence located at 73 Graegle Ct., Oakland, California (the "Property"), in which she has enough equity to pay all her secured and unsecured claims in full. It was thus apparent that a chapter 7 trustee would have sold the Property to pay allowed claims in the chapter 7 case.

Having engaged counsel post-filing, Debtor made the decision to convert her case to one under chapter 13, which would permit her to propose and possibly confirm a plan to pay her creditors, including arrears on any claims secured by the Property, as well as unsecured claims, as allowed. Of greatest importance to Debtor, it would have enabled her to retain the Property, her home. However, of great significance in this matter, because in a chapter 7 case all allowed claims would have been paid in full from the proceeds of sale of the Property, any chapter 13 plan proposed by the Debtor would be required to treat creditors equally well, meaning that the plan would have to ensure that all holders of allowed unsecured claims would be paid in full pursuant to § 1325(a)(4) (better known as the "best interests of creditors test," stating that a chapter 13 plan may only be confirmed if unsecured creditors receive as much as they would receive under a chapter 7

---

[1] Debtor initially filed objections to the same claims on the same basis of the purported untimeliness of LVNV's proofs of claim, which the Court previously overruled on May 17, 2018. In its decision the Court applied an excusable neglect standard pursuant to *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 398 (1993). After a Motion to Reconsider (doc. 117) was also denied by the Court, Debtor appealed. For the reasons stated in the Final Order by District Court Judge Jeffrey S. White (doc. 182), the District Court reversed and remanded the Court's decision and ordered the Court to "determine whether it would be just and practicable to apply the amended version of Rule 3002(c) in this case." (Id. at 6).

[2] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Case: 17-42255  Doc# 206  Filed: 05/08/19  Entered: 05/08/19 16:44:26  Page 2 of 9

liquidation).

On October 23, 2017, on motion of the Debtor, the case was converted to a chapter 13 bankruptcy.  On October 25, 2018, the Court entered a *Notice of Chapter 13 Bankruptcy Case*, Official Form 309I (the "Notice") (doc. 23). Pursuant to (and as required by) Rule 2002(f)(3), the Court mailed the Notice, which contained all pertinent deadlines, including the deadline to file proofs of claim, to all creditors listed in Debtor's bankruptcy schedules.  The filing deadline for all non-government creditors to file proofs of claim set forth in the Notice was February 28, 2018, in accordance with then-in-effect Rule 3002(c) ("a proof of claim is timely filed if it is not later than 90 days after the first date set for the meeting of creditors").

Also on October 25, 2018, prior to any proof of claim being filed, Debtor filed her first chapter 13 plan (doc. 24).  That plan proposed to pay zero-percent of allowed unsecured claims.  The Chapter 13 Trustee objected to this plan on the basis that the plan needed to pay all allowed claims, including unsecured claims, in full.  The plan eventually confirmed by the Debtor on August 14, 2018 (Debtor's Fourth Amended Plan, doc. 148) provides for the payment of all allowed unsecured claims in full, as it must.

On December 1, 2017, an amended version of Rule 3002 took effect, among myriad other Rule amendments.  Amended Rule 3002(c) shortens the deadline to file proofs of claim to 70 days after an order for relief is entered or a bankruptcy case is converted. Chief Justice John Roberts' Order transmitting the amendments to Congress stated "the foregoing amendments to the Federal Rules of Bankruptcy Procedure shall take effect on December 1, 2017 and shall govern in all proceedings in bankruptcy cases thereafter commenced and, *insofar as just and practicable*, all proceedings then pending." (Transmittal of 2017 Federal Bankruptcy Rule Amendments from Supreme Court to Congress, at 3) (emphasis added).

On February 27, 2018 LVNV filed three proofs of unsecured claim, totaling, in the aggregate, approximately $1500.  These claims were acquired by LVNV from Capitol One Bank, N.A. and Arrow Financial Services, LLC. It thus appears that these claims are credit card debts.  Debtor objects to these general unsecured claims on the basis that the claims were untimely filed, because

-3-

the bar date for the filing of claims pursuant to amended Rule 3002(c) was January 1, 2018. Debtor has not objected to the claims based on any other ground.

LVNV defends the timeliness of its filings, arguing that it would not be "just and practicable" for the Court to apply amended Rule 3002(c) effectively to shorten by fifty-eight days the deadline duly set by the Court to file proofs of claim on this chapter 13 case.

**It is Neither Just nor Practicable to Apply Amended Rule 3002(c) in Debtor's Case.**

Courts within the Ninth Circuit that have addressed the question of whether application of an amended Rule of Civil or Criminal Procedure would be "just and practicable" have done so on a case-by-case basis. *See United States v. Pangang Group Co.*, No. 11-cr-00573-JSW, 2017 WL 3034063 at *6 (N.D. Cal. Jul. 18, 2017) (just and practicable to apply amended Fed. R. Crim. P. 4 to pending case because defendants had actual notice of indictment for years but had evaded service due to deficiencies of former Rule 4 which were corrected by the amended Rule); *United States v. Woods*, No. 05-10494, 173 F.App'x. 631 (9th Cir. 2006) (not abuse of discretion to find it was just and practicable to apply amended Fed. R. Crim. P. 33 when defendant had more than 31 months to file relevant motion under amended Rule's deadline); *United States v. Ross*, 372 F.3d 1097, 1105 & n. 6 (9th Cir. 2004) (not abuse of discretion to find it was not just and practicable to apply amended Fed. R. Crim. P. 33 when defendant's filing deadline would have been drastically shortened under the amended Rule's deadline).

Taking direction from the analysis in these cases, the Court will first determine whether it is just and practicable to apply amended Rule 3002 to Debtor's case. However, because of the unique administrative function of the bankruptcy courts within the claims administration process, the Court will then briefly examine whether it is just and practicable to apply amended Rule 3002 to cases pending as of December 1, 2019 on a more generalized, institutional basis.

As noted above, Chief Justice Roberts' Transmittal Order to Congress stated that the amended Rules were to be applied to then-pending cases "insofar as just and practicable." The Ninth Circuit noted in a case analyzing amendments to the Federal Rules of Criminal Procedure that "[t]his language is not unique--it has been submitted by the Supreme Court with nearly all amendments to

-4-

the Federal Rules of Criminal Procedure--and indicates the intent that the rules be applied to pending cases only if such application would be 'just and practicable.'"

The Court notes that amendments to Rules go into effect annually on December 1, and that in any given year, there are amendments to numerous Rules.  For instance, the Transmittal Order amending Rule 3002 also amended Rules 2002, 3007, 3012, 3015, 4003, 5009, 7001, and 9009. Application of some of these amended Rules (such as Rule 7001, governing the types of issues to be brought via adversary proceeding) would have minimal to no effect on pending cases, while application of other amended Rules may have a large impact on pending cases.

In her papers and during oral argument, Debtor argued that any amendment to the Rules must take effect immediately and without limitation—in essence, that counsel (and presumably, parties) are charged with notice of any Rules amendments (whether such amendments are officially recognized as being applicable to pending cases or not) and must "act accordingly." Notwithstanding the apparent inflexibility of this position, Debtor urges the Court to conclude that any prior informal notice (including, presumably, deemed notice) of Rule amendments provides, by itself, and with no consideration for any other factor or circumstance, all of the "just-ness and practicable-ness" necessary to make amendments universally, immediately and retroactively effective.  But this unyielding, one-size-fits-all interpretation would read the phrase "insofar as is just and practicable" completely out from the Chief Justice's direction, and would prohibit courts from exercising the discretion, in applying Rule changes to pending cases, that the Chief Justice's message has consistently indicated they should apply.

In directing courts to apply the amended Rules insofar as is "just and practicable" to pending cases, Chief Justice Roberts clearly gave courts discretion to evaluate the impact of applying the amended Rules to pending cases. Neither the Supreme Court nor the Ninth Circuit have directly addressed the appropriate interpretation of the phrase "just and practicable."  The Court considers the words below.

First, the Court understands the word "just"[3] to mean, in this context, basic fairness to all parties involved in the bankruptcy system. Inherent to such basic fairness is the concept that a Rule should not unduly burden debtors to the advantage creditors, or vice versa. It would be unduly burdensome to LVNV to decide that LVNV's proof of claim filing deadline was actually fifty-eight days fewer than a deadline provided by the Court, pursuant to a required and official "Notice" on which LVNV relied.

Basic fairness also means treating creditors within a case similarly and equitably. Debtor's prior conduct in this case demonstrates no fidelity to this objective. In a circumstance in which it clearly benefitted her to do so, Debtor stipulated to allow a late filed (March 2, 2018, two days after the officially noticed deadline) secured claim of creditor Sequoyah Heights Homeowners' Association. (Stipulation to Allow Creditor Sequoyah Heights Homeowners Association's Late Proof of Claim, doc. 73). Debtor was willing to indulge Sequoyah in a late-filed claim issue because, as a secured creditor, Sequoyah's lien would not have been discharged, and would have burdened the Property even after Debtor completed her plan and received a discharge. To permit Debtor to choose to allow a late-filed claim (which was late-filed by the standards of both former and amended Rule 3002(c)) while also permitting Debtor to object to and disallow an earlier filed unsecured claim would not be just under the circumstances of this case.

Second, the Court understands the word "practicable" to mean "reasonably capable of being accomplished; [or] feasible in a particular situation." (*Practicable*, Black's Law Dictionary (10th ed. 2014)). The practicability of applying amended Rule 3002(c) must be considered within the context of the role of the Court within the bankruptcy system. As opposed to litigation, in which a court oversees disputes between litigants, in bankruptcy the Clerk's Office and to some extent, the court also perform administrative roles. The chapter 13 process begins with a debtor filing a case and a plan and ends with either dismissal, conversion to a case under a different chapter of the Code, or plan completion. The filing and allowance or disallowance of claims is a principal function of this system. The critical first step a general unsecured creditor must take to ensure its valid debt is

---

[3] Black's Law Dictionary defines the term "just" as "[l]egally right; lawful; equitable. *Just*, Black's Law Dictionary (10th ed. 2014).

-6-

Case: 17-42255    Doc# 206    Filed: 05/08/19    Entered: 05/08/19 16:44:26    Page 6 of 9

entitled to treatment under a plan is to timely file a proof of claim. Because adherence to the deadline associated with filing proofs of claim is essential for unsecured creditors seeking to maintain their rights to repayment, Rule 2002 mandates the Clerk of Court to "send notice by mail of . . . the time allowed for filing claims pursuant to Rule 3002" on 21 days' notice to creditors. This requirement is critical because it transforms a deadline from an abstract concept (e.g., within 70 days of case filing or conversion) to a date certain (e.g., February 28, 2018), thereby enabling creditors simply and efficiently to comply with the deadline. Rule 2002 demonstrates the centrality of the Court's role is within the proof of claim filing process.

To decide at a later stage of a case that a deadline duly noticed out by the Clerk's Office, that creditors duly relied upon, was changed automatically so as to remove fifty-eight days from a filing deadline, without further notice to Debtor or creditors from the Clerk of Court as mandated by Rule 2002, is simply not practicable. And to decide that an amended rule applies to a pending case when the only effect of application is to disallow otherwise meritorious claims is not just.

Debtor also argues that it is just and practicable to apply amended Rule 3002(c) retroactively because the policy behind any filing deadline for proofs of claim is to prevent the unraveling of "the debtor's carefully constructed plan of reorganization to the detriment of the creditors who showed up on time . . . ." (Debtor's Reply Brief, doc. 199 at 3). The Court does not find this argument credible on the facts of this case. As noted above, Debtor carefully crafted and filed a Chapter 13 plan prior to any creditor "showing up" by way of filing a proof of claim. While Debtor's first plan attempted to pay zero-percent of unsecured claims, Debtor's later plans accepted that in order to satisfy the requirements of § 1325(a)(4), all allowed general unsecured claims would have to be paid in full. The relevant claims question in a case where all unsecured creditors are to be paid in full is whether Debtor has enough disposable income to pay the allowed claims--as opposed to the perhaps more common scenario in which Debtor must carefully craft a plan which pays cents on the dollar to various unsecured creditors, and a late-filed claim would require the Debtor to go back to the drawing board, divvying up her disposable income slightly differently, and cause timely-filing creditors to take an even smaller slice of pie to accommodate a late-comer if such claim were to be allowed. These issues which Debtor attempts to invoke as reason to disallow the claim are simply

not applicable to Debtor's 100% plan. Based on the disposition of the case, it appears not that Debtor was blind sided by late filing creditors, but instead that Debtor attempted to blind side unwary creditors that filed proofs of claim according to the deadline set forth by the Court upon conversion of Debtor's case.

**It is Neither Just nor Practicable to Apply Amended Rule 3002(c) to Any Case Pending as of December 1, 2017.**

Moreover, it would not have been practicable for the Court to apply amended Rule 3002(c) to any or all cases pending as of December 1, 2017. Were the Court to apply the amended Rule to any then-pending case, the Court would have had to re-comply with the notice and mailing requirements of Rule 2002(a) and (h) as discussed above. At least 937 then-pending chapter 13 cases in which the deadline to file proofs of claim had not yet run on December 1, 2017 (this number does not include pending cases which had been converted to chapter 13, such as Debtor's case). To apply amended Rule 3002(c), the Clerk of Court would have had to prepare and send out Notices that drastically shorten pre-set filing deadlines, to all creditors listed in more than 937 proceedings. The immense time and cost of such an endeavor places the application of amended Rule 3002 to then-pending cases squarely in the realm of the impracticable. If amended Rule 3002(c) were to apply, as Debtor wishes, to all cases retroactively, in some cases the shortening of the deadline would have been more drastic than Debtor's case.

For all of the foregoing reasons, the Debtor's Objection is overruled.

IT IS SO ORDERED.              **\*END OF ORDER\***

**COURT SERVICE LIST**